STATE OF NORTH CAROLINA v. WILLIAM ROBERT GRAY, JR.

No. 556A93

(Filed 3 October 1997)

**1. Criminal Law § 402 (NCI4th Rev.)— capital murder—pretrial remarks by court to jury—introduction of court reporter—possibility of appeal—jury not relieved of responsibility**

The trial court did not err in a capital first-degree murder prosecution in its pretrial instruction to the jury on court procedures by introducing the court reporter, indicating that she was appointed by the senior resident judge, and stating that it was her duty to take down and transcribe everything said during the trial and motions so that it could be reviewed by the judge or the Supreme Court should it be appealed. This statement did not imply to the jury that the Supreme Court would correct any errors the jury might make.

Am Jur 2d, Trial § 285.

**Prejudicial effect of statement by prosecutor that verdict, recommendation of punishment, or other finding by jury is subject to review or correction by other authorities. 10 ALR5th 700.**

**2. Jury § 120 (NCI4th)— capital murder—jury selection—leading questions—no error**

The trial court did not err in a capital first-degree murder prosecution in allowing the State to use leading questions during the jury *voir dire*. Although leading questions should not in most cases be used when testimony is being offered to a jury, it is not error to allow such questions at *voir dire*.

Am Jur 2d, Jury §§ 190, 191, 193, 194, 210.

**3. Jury § 229 (NCI4th)— capital murder—voir dire—feelings about death penalty—potential juror excused—no error**

The trial court did not err during *voir dire* for a capital first-degree murder prosecution by excusing a potential juror who said on questioning by the prosecutor that his feelings about the death penalty would prevent him from considering it; said on questioning by the defendant that he could follow the court's

STATE v. GRAY

[347 N.C. 143 (1997)]

instructions in regard to the death penalty; said on further questioning by the State that he did not think his feelings would completely block him from considering the death penalty but that they would hinder him from doing so; said that he would not automatically vote against the death penalty but that he did not think he could come into the courtroom and look the defendant in the eye and say he had voted for the death penalty; and said in response to the court that he would be unable to render a verdict with respect to the charge in accordance with the law both as to the guilt-innocence and penalty phases. The colloquy with the potential juror amply supports a finding that his views could substantially impair the performance of his duties as a juror.

Am Jur 2d, Jury §§ 160, 177, 226.

Comment note: beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.

Religious belief, affiliation, or prejudice of prospective juror as proper subject of inquiry or ground for challenge on voir dire. 95 ALR3d 172.

4. Jury § 229 (NCI4th)— capital murder—voir dire—feelings about death penalty—bias of juror—trial court's judgment

The trial court did not err during *voir dire* for a capital first-degree murder prosecution by excusing a potential juror who made contradictory statements regarding capital punishment. Where a prospective juror's bias may not be proven with unmistakable clarity, the trial judge's judgment must be depended upon in determining whether the prospective juror would be able to follow the law impartially. The superior court judge was in the best position to judge the bias of the juror and there was an ample showing of bias to support his conclusion.

Am Jur 2d, Jury §§ 160, 177, 226.

Comment note: beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.

Religious belief, affiliation, or prejudice of prospective juror as proper subject of inquiry or ground for challenge on voir dire. 95 ALR3d 172.

STATE v. GRAY

[347 N.C. 143 (1997)]

**5. Jury § 227 (NCI4th)— capital murder—voir dire—feelings about death penalty—juror excused—no error**

The trial court did not err during *voir dire* for a capital first-degree murder prosecution by excusing a potential juror who said he believed in the death penalty only for a second offense and that he would not impose it for a first murder; said that he would follow the court's instructions when questioned by defendant; and reiterated that he would not impose the death penalty for a first offense of murder when questioned by the court.

**Am Jur 2d, Jury §§ 160, 177, 226.**

**Comment note: beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.**

**Religious belief, affiliation, or prejudice of prospective juror as proper subject of inquiry or ground for challenge on voir dire. 95 ALR3d 172.**

**6. Jury § 219 (NCI4th)— capital murder—voir dire—potential jurors who would never vote for death penalty—excused—no error**

The trial court did not err during *voir dire* for a capital first-degree murder prosecution by excusing potential jurors who said they believed in the death penalty but would not vote to impose it on another human being or who said they would always vote for life in prison and never vote for the death penalty.

**Am Jur 2d, Jury §§ 160, 177, 226.**

**Comment note: beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.**

**Religious belief, affiliation, or prejudice of prospective juror as proper subject of inquiry or ground for challenge on voir dire. 95 ALR3d 172.**

**7. Constitutional Law § 342 (NCI4th)— capital murder—order for subpoenas duces tecum—defendant not present—no violation of constitutional rights**

The constitutional and statutory rights of a defendant in a capital first-degree murder prosecution were not violated by the

STATE v. GRAY

[347 N.C. 143 (1997)]

trial court's *ex parte* issuance of subpoenas *duces tecum* to the North Carolina Department of Revenue for defendant's intangibles tax documentation, returns and account information. The issuance of the subpoenas and the order were the gathering of evidence for use at trial and were not stages of the trial which entitled the defendant or his attorney to be present. A defendant does not have the right to be present as the State gathers its evidence.

**Am Jur 2d, Judges § 169; Motion, Rules, and Orders § 33.**

**Disciplinary action against judge for engaging in ex parte communication with attorney, party, or witness. 82 ALR4th 567.**

8. **Homicide § 603 (NCI4th)— capital murder—jury charge on self-defense—not given—no error**

The trial court did not err in a capital prosecution for first-degree murder by refusing to charge on self-defense where all of the evidence which would exculpate defendant showed that the shooting was accidental.

**Am Jur 2d, Homicide §§ 140 et seq., 249, 529; Trial § 830.**

**Homicide: burden of proof on defense that killing was accidental. 63 ALR3d 936.**

**Accused's right, in homicide case, to have jury instructed as to both unintentional shooting and self-defense. 15 ALR4th 983.**

**Standard for determination of reasonableness of criminal defendant's belief, for purposes of self-defense claim, that physical force is necessary—modern cases. 73 ALR4th 993.**

9. **Evidence and Witnesses § 1064 (NCI4th)— capital murder—instructions—flight—not evidence of premeditation and deliberation**

There was no plain error in a capital prosecution for first-degree murder where defendant contends that the court allowed evidence of flight to be used as evidence of premeditation and deliberation by not giving the portion of the pattern jury instruc-

tion which said that the evidence could not be so used. The court charged the jury that it could consider evidence of flight as showing a consciousness of guilt, which is a correct statement of law, and did not say that the jury could consider evidence of flight as evidence of premeditation and deliberation. It is speculative as to whether the jury took this to mean it could consider the evidence in that way.

Am Jur 2d, Homicide § 319; Trial § 1333.

Modern status of the rules requiring malice "aforethought," "deliberation," or "premeditation," as elements of murder in the first degree. 18 ALR4th 961.

10. **Evidence and Witnesses § 90 (NCI4th)— capital murder— deposit ticket and cash register tape—victim's purchase of stun-gun—excluded—no error**

The trial court did not err in a capital prosecution for first-degree murder by excluding from evidence a deposit ticket and cash register tape which defendant contends were some proof that the victim, his wife, had purchased a stun-gun where a stun-gun was found next to the body, a pathologist testified that the victim had been shot in the face with the stun-gun, and defendant attempted to prove that his wife first had possession of the stun-gun. There was no connection between the proffered evidence and the fact to be proved; the evidence did not show that the sale was to a woman, that it was made to the victim, or that there was a sale of a stun-gun. There was as much chance of confusion if the evidence had been introduced as there was that any fact would have been proved. N.C.G.S. § 8C-1, Rule 403.

Am Jur 2d, Evidence §§ 324 et seq.; Homicide § 560; Trial § 1965.

11. **Evidence and Witnesses § 3096 (NCI4th)— capital murder—recording of conversation between defendant and victim—denied by defendant—motive—not collateral**

The trial court did not err in a capital prosecution for first-degree murder by allowing the State to play for the jury on rebuttal a recording of a telephone conversation between defendant and his wife, the victim, where defendant had at first denied asking his wife about some bonds, then said that he could not remember it. Defendant argued that the question concerning the bonds was designed to impeach him on a collateral matter and

STATE v. GRAY

[347 N.C. 143 (1997)]

that the State was bound by his answer. However, the recording showed defendant's motive for the murder and was not for impeachment purposes only. Although it contained a reference to the "physical harm" defendant had done to the victim which probably should have been excluded, there was substantial other evidence of harm the defendant had done to his wife.

**Am Jur 2d, Evidence §§ 1234-1236; Trial §§ 365, 367, 370.**

**Admissibility in evidence of sound recording as affected by hearsay and best evidence rules. 58 ALR3d 598.**

**Right of accused in state courts to inspection or disclosure of tape recording of his own statements. 10 ALR4th 1092.**

**Admissibility of tape recording or transcript of "911" emergency telephone call. 3 ALR5th 784.**

12. **Criminal Law § 116 (NCI4th Rev.); Evidence and Witnesses § 762 (NCI4th)— capital murder—affidavit in which defendant's son lied—read at bond hearing—discoverable at trial—cumulative—no prejudice**

There was no prejudicial error in a capital prosecution for first-degree murder in the trial court requiring that defendant furnish the State an affidavit made by his son and to the reading of the affidavit by the jury where the son testified that his father had called him and his sister into the bathroom after the shooting and told them their mother had suffered an accident but that no one would believe him; told them to tell anyone who asked that their father was in the bathtub at the time of the shooting; the son gave an affidavit in which he said his father was in the bathtub at the time the victim was shot; and defendant's attorney read the affidavit at a bond hearing. Assuming the affidavit was not discoverable under N.C.G.S. § 15A-906, defendant waived his right not to produce it when his attorney read it at the bond hearing. As to its admission into evidence, it could not have prejudiced defendant because defendant and his son had testified that defendant had told his son to lie and the affidavit could only have been cumulative evidence of what was not in dispute.

**Am Jur 2d, Evidence §§ 1115, 1260, 1261.**

**Admissibility of affidavit to impeach witness. 14 ALR4th 828.**

**13. Evidence and Witnesses § 1256 (NCI4th)— capital murder—right to counsel invoked—subsequent question by jailer—not designed to elicit incriminating testimony**

The trial court did not err in a capital prosecution for first-degree murder by not excluding testimony from a jailer that he had asked defendant if there was anything else he could do for defendant as he was putting him in his cell and that defendant had replied, "No. At least now I can get a good night's sleep." Although defendant argues that this colloquy should have been excluded because it came after he had invoked his right to counsel, the question by the jailer was not designed to elicit incriminating evidence and the testimony was properly admitted.

**Am Jur 2d, Evidence §§ 870 et seq.; Homicide § 338; Trial §§ 1353, 1357.**

**Admissibility, in civil action, of confession or admission which could not be used against party in criminal prosecution because obtained by improper police methods. 43 ALR3d 1375.**

**14. Criminal Law § 1338 (NCI4th Rev.)— capital sentencing—pending misdemeanor warrants—admissible**

The trial court did not err during a capital sentencing hearing by admitting into evidence four misdemeanor warrants charging defendant with false imprisonment, assault on a female, communicating threats, and attempted assault with a deadly weapon. Defendant contends that the warrants contain hearsay testimony, but the Rules of Evidence do not apply in capital sentencing proceedings and the evidence on the warrants that charges were pending against defendant and that his wife would be a witness against him was probative of the aggravating circumstance that defendant killed a witness against him. N.C.G.S. § 15A-2000(a)(3).

**Am Jur 2d, Homicide § 554.**

**Consideration of accused's juvenile court record in sentencing for offense committed as adult. 64 ALR3d 1291.**

**15. Evidence and Witnesses § 876 (NCI4th)— capital murder—statements of victim—state of mind—admissible**

The trial court did not err in a capital murder prosecution by admitting as a state of mind exception to the hearsay rule testimony from several witnesses as to what the victim told them.

Each of the witnesses testified that the victim was in fear for her life, the factual circumstances surrounding her statements of emotion serve only to demonstrate the basis for the emotions, each of the witnesses testified that the victim had stated with specific reason and generally that she was scared of defendant, a searching *voir dire* of each witness took place where appropriate, and the jury was properly instructed that it was to consider the testimony only for the purpose of showing the victim's state of mind. N.C.G.S. § 8C-1, Rule 803(3).

**Am Jur 2d, Evidence §§ 667, 696.**

**Residual hearsay exception where declarant unavailable: uniform evidence Rule 804(b)(5). 75 ALR4th 199.**

16. **Criminal Law § 470 (NCI4th Rev.)— capital murder—prosecutor's argument—prior acts of violence against victim**

There was no error in closing arguments in a capital murder prosecution where the prosecutor argued defendant's prior acts of violence against his wife, the murder victim, as substantive evidence even though some evidence of the incidents had been admitted to show the victim's state of mind. Evidence of the choking incident and sexual assault came in under another hearsay exception during the testimony of the victim's doctor, and evidence concerning a choking incident and the stealing of the victim's Jeep were testified to by defendant himself.

**Am Jur 2d, Homicide § 573; Trial § 496.**

**Admissibility of evidence of prior physical acts of spousal abuse committed by defendant accused of murdering spouse or former spouse. 24 ALR5th 465.**

17. **Evidence and Witnesses § 1006 (NCI4th)— capital murder—victim's statements—residual hearsay exception—no plain error**

There was no plain error in a capital prosecution for first-degree murder where the court admitted testimony that the victim had told the witness that defendant had attempted to rape her in front of her children, defendant objected to the word rape, the court told the jury to use the word "attack"; and the witness also testified that the deceased had told her that defendant had followed her, harassed her, and told her he would kill her.

**Am Jur 2d, Homicide § 573; Evidence §§ 667, 696; Trial § 496.**

STATE v. GRAY

[347 N.C. 143 (1997)]

Residual hearsay exception where declarant unavailable: uniform evidence Rule 804(b)(5). 75 ALR4th 199.

Admissibility of evidence of prior physical acts of spousal abuse committed by defendant accused of murdering spouse or former spouse. 24 ALR5th 465.

18. **Evidence and Witnesses § 1006 (NCI4th)— capital murder—prior acts of violence toward victim—statements of victim—residual hearsay exception**

The trial court did not err in a capital prosecution for first-degree murder by admitting under the residual hearsay exception testimony that the victim had displayed a bruise on her hip and had told the witness that defendant, her estranged husband, had forced his way into her apartment, pushed her against a wall, and attempted to force her head into a toilet. The statements had guarantees of trustworthiness in that the alleged action of defendant was consistent with other evidence; the proffered statements were evidence of defendant's intent, a material fact; this testimony as to defendant pushing the victim against the wall was more probative than other evidence on this point; the testimony involved principally factual matters and would not have been admitted under the state of mind exception; the testimony was relevant to matters involved in the case; and the interests of justice were served by its admission. N.C.G.S. § 8C-1, Rule 804(b).

Am Jur 2d, Homicide § 573; Evidence §§ 667, 696; Trial § 496.

Residual hearsay exception where declarant unavailable: uniform evidence Rule 804(b)(5). 75 ALR4th 199.

Admissibility of evidence of prior physical acts of spousal abuse committed by defendant accused of murdering spouse or former spouse. 24 ALR5th 465.

19. **Evidence and Witnesses § 961 (NCI4th)— capital murder—prior acts of violence—victim's statements to doctor outside office—medical treatment exception**

There was no plain error in a prosecution for first-degree murder in the admission of the testimony of the victim's doctor, accepted as a expert in obstetrics and gynecology, who testified that the victim came to see him at his home and told him that defendant had tried to choke her to the point of almost passing

STATE v. GRAY

[347 N.C. 143 (1997)]

out, that defendant had tried to sexually assault her, that defendant had said, "I could have killed you if I wanted to," during which time the children were screaming and saying "Stop Daddy. Don't hurt her," and that the victim on a subsequent visit had told him that she and defendant had been seeing a marriage counselor but that the counselor had stopped seeing them because she was afraid of defendant. The doctor examined the victim's physical condition and suggested that she go to the hospital, a medical recommendation which was treatment even though he was not in his office, and most of the testimony was admissible as statements made for the purpose of medical treatment. The testimony concerning the children screaming and the marriage counselor probably should have been excluded if an objection had been made, but does not rise to the level of plain error.

**Am Jur 2d, Homicide § 573; Evidence §§ 667, 696; Trial § 496.**

**Residual hearsay exception where declarant unavailable: uniform evidence Rule 804(b)(5). 75 ALR4th 199.**

**Admissibility of evidence of prior physical acts of spousal abuse committed by defendant accused of murdering spouse or former spouse. 24 ALR5th 465.**

**20. Evidence and Witnesses § 945 (NCI4th)— capital murder— statements from victim during crime—integral and natural part of account of crime**

The trial court did not err in a capital first-degree murder prosecution by admitting testimony from a jogger that the victim had said, while defendant was holding her on the ground, "Mister, please don't leave. If you leave, he'll kill me." Evidence which is so intertwined with the evidence of the commission of a crime that it forms an integral and natural part of the account of the crime is admissible.

**Am Jur 2d, Homicide § 573; Evidence §§ 667, 696; Trial § 496.**

**Residual hearsay exception where declarant unavailable: uniform evidence Rule 804(b)(5). 75 ALR4th 199.**

**Admissibility of evidence of prior physical acts of spousal abuse committed by defendant accused of murdering spouse or former spouse. 24 ALR5th 465.**

STATE v. GRAY

[347 N.C. 143 (1997)]

**21. Criminal Law § 475 (NCI4th Rev.)— capital murder—prosecutor's argument—flight**

There was no gross impropriety requiring intervention *ex mero motu* in the prosecutor's argument in a capital first-degree murder prosecution where defendant contended that the prosecutor improperly argued flight as proof of premeditation and deliberation. It was not clear that the district attorney was referring to flight when he mentioned premeditation and deliberation.

· **Am Jur 2d, Homicide § 319; Trial § 1333.**

**Modern status of the rules requiring malice "afore-thought," "deliberation," or "premeditation," as elements of murder in the first degree. 18 ALR4th 961.**

**22. Appeal and Error § 362 (NCI4th)— capital murder—verdict sheet lost—evidence sufficient to determine appeal**

The record was sufficient to determine the appeal in a capital prosecution for first-degree murder where the verdict sheet was lost in the office of the clerk of superior court. Although defendant argues that there is no way to determine whether the verdict was properly returned in the absence of a valid verdict sheet, and there are cases holding that the appeal may be dismissed if the verdict sheet is not included in the record, the transcript here reveals that the judge and the clerk examined the verdict sheet after it was taken by the bailiff from the jury and that each juror was polled. There can be no doubt that the jury found defendant guilty of first-degree murder.

**Am Jur 2d, Appellate Review § 742; Criminal Law §§ 81, 304.**

**23. Criminal Law § 78 (NCI4th Rev.)— capital murder—motion for change of venue or special venire—pretrial publicity**

The trial court did not err in a capital prosecution for first-degree murder by denying defendant's motion for a change of venue or for a special venire where a newspaper account, although erroneous, was not prejudicial in that it did not contain any false information that was prejudicial; a television program which reported that one of defendant's attorneys had been shot by his wife could not have prejudiced defendant; and there was a vigorous cross-examination of a polling expert who testified that defendant could not get a fair trial in the county, particularly on

the ability of the respondents in the polls to understand the meaning of a "fair trial." The burden was on defendant to show prejudice and the court could have felt that defendant had not carried his burden.

**Am Jur 2d, Criminal Law §§ 378, 380-390; Homicide § 204; Venue §§ 58 et seq.**

**Right of accused in misdemeanor prosecution to change of venue on grounds of inability to secure fair trial and the like. 34 ALR3d 804.**

**Change of venue by state in criminal case. 46 ALR3d 295.**

**Choice of venue to which transfer is to be had, where change is sought because of local prejudice. 50 ALR3d 760.**

24. **Arrest and Bail § 63 (NCI4th); Searches and Seizures § 48 (NCI4th); Constitutional Law § 262 (NCI4th)— capital murder—statements to law enforcement officers— admissible**

There was no error in a capital prosecution for first-degree murder in the denial of defendant's motion to suppress all of his statements to law enforcement officers and items gathered in a search of his home where defendant contended that he was arrested without probable cause and that his statements should have been suppressed, but officers found the victim's body at the scene when they arrived and a neighbor told them that defendant had killed his wife, so that they had probable cause to arrest; defendant contended that entry into his home without a warrant was illegal, requiring his statements to be suppressed, but he came to the door armed with a pistol which was later found to be a toy, an exigent circumstance which justified entry into the house without a search warrant to arrest defendant; and defendant contends that his request for counsel in his home was ignored, but a neighbor and member of the bar was outside defendant's home as he was being taken to police headquarters, defendant requested that the neighbor represent him, an officer notified the neighbor of the request, and the neighbor followed defendant to the police station and remained with defendant during the police interrogation.

**Am Jur 2d, Arrest §§ 42-45.**

STATE v. GRAY

[347 N.C. 143 (1997)]

**25. Criminal Law § 1369 (NCI4th Rev.)— capital sentencing— murder of spouse during divorce proceeding—pending misdemeanor warrants—two circumstances**

The trial court did not err in a capital sentencing proceeding by submitting the aggravating circumstances that the murder was committed to disrupt or hinder the lawful exercise of a governmental function and that the murder was committed against this victim because of the exercise of her official duty as a witness. Although the same evidence cannot be used to support two aggravating circumstances, the circumstance dealing with disrupting or hindering a governmental function was supported by evidence that defendant had been served with a show cause order for an accounting of marital monies in a divorce action which was returnable a few days after the murder. That evidence did not support the circumstance that the victim was to be a witness in a criminal case, and the evidence that the victim had sworn out warrants and was to be a witness against defendant did not support the circumstance that the murder disrupted a civil proceeding. The court adequately explained to the jury how to consider the evidence by defining the two aggravating circumstances and explaining the evidence supporting each of them. N.C.G.S. § 15A-2000(e)(7); N.C.G.S. § 15A-2000(e)(8).

**Am Jur 2d, Criminal Law §§ 598, 599.**

**26. Criminal Law § 1372 (NCI4th Rev.)— capital sentencing— aggravating circumstances—especially heinous, atrocious or cruel—evidence sufficient**

There was sufficient evidence in a capital sentencing proceeding to submit the especially heinous, atrocious, or cruel aggravating circumstance where the victim was defendant's wife; he abused her psychologically and physically, stalked her, and stated that he could kill her; she was afraid that he would do so; she was stung with a stun-gun and pistol whipped prior to being shot; and defendant left her in her last moments aware of her impending death but unable to do anything about it.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**27. Criminal Law § 1369 (NCI4th Rev.)— capital sentencing— aggravating circumstances—victim's role as witness**

There was sufficient evidence in a capital sentencing proceeding to submit the aggravating circumstance that the murder

was committed because of the victim's role as a witness where the State introduced four criminal warrants against defendant which were based on acts of violence against the victim, with the victim listed as the complainant on each warrant. The jury could find from this evidence that the victim had procured warrants against him or that she was waiting to testify against him and that one of the reasons defendant killed her was because she had warrants issued against him. Procuring a warrant and waiting to testify constitute the performance of an official duty of a witness. N.C.G.S. § 15A-2000(e)(8).

**Am Jur 2d, Criminal Law §§ 598, 599.**

**28. Criminal Law § 1369 (NCI4th Rev.)— capital sentencing— aggravating circumstance—disruption of government function—evidence sufficient**

The trial court did not err in a capital sentencing proceeding by submitting the aggravating circumstance that the murder was committed to disrupt or hinder the lawful exercise of a governmental function where defendant and his wife were engaged in a bitter divorce action; defendant was determined that his wife would get nothing from the marriage; he had liquidated marital property and put the proceeds in his name; and he would not answer interrogatories. The jury could reasonably find that one reason he killed his wife was to stop this action against him. N.C.G.S. § 15A-2000(e)(7).

**Am Jur 2d, Criminal Law §§ 598, 599.**

**29. Criminal Law § 1375 (NCI4th Rev.)— capital sentencing— instructions—statutory mitigating circumstances—weight**

The trial court did not err in a capital sentencing proceeding by charging the jury as to statutory mitigating circumstances that they had mitigating value but that the weight to give those circumstances is up to the jury. Although defendant contends that the jury should have been told that it must give mitigating circumstances some weight, the instruction given complied with *State v. Fullwood*, 323 N.C. 371, and was not like *State v. Jaynes*, 342 N.C. 249.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**30. Criminal Law § 1392 (NCI4th Rev.)— capital sentencing— mitigating circumstance—ability to adjust well and be of service in prison—not submitted—no prejudice**

There was no prejudicial error in a capital sentencing proceeding in not submitting as a mitigating circumstance that the defendant has demonstrated an ability to adjust well in prison and could be of service to fellow prisoners by working as a dental assistant where the evidence supporting the proposed mitigating circumstance was tenuous at best, the jury found as a mitigating circumstance that defendant had exhibited good conduct while in jail, and the jury did not find the catch-all mitigating circumstance. The jury was able to consider defendant's evidence under the circumstances submitted; if it did not consider defendant's conduct in jail sufficient to outweigh the aggravating circumstances, it is not likely it would have thought his potential conduct in prison would outweigh the aggravating circumstances.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**31. Criminal Law § 448 (NCI4th Rev.)— capital murder—prosecutor's argument—jury's duty—violent crimes—not grossly improper**

A prosecutor's jury argument in a capital first-degree murder prosecution was not so grossly improper as to require intervention *ex mero motu* where the prosecutor argued that the jurors should take seriously the obligation to do something about violent crimes. This was part of the district attorney's general remarks at the opening of his summation which emphasized the duties of the jurors and did not ask the jury to convict defendant because of public sentiment against crime.

**Am Jur 2d, Trial §§ 567 et seq.**

**32. Criminal Law § 460 (NCI4th Rev.)— capital sentencing— prosecutor's argument—age, status, size of defendant— not grossly improper**

A prosecutor's jury argument that a first-degree murder defendant's age, status, and size should be considered in determining whether he should receive the death sentence was not so grossly improper as to require intervention *ex mero motu*; the character of the defendant is relevant in determining whether the death penalty should be imposed.

**Am Jur 2d, Trial §§ 572, 573.**

**33. Criminal Law § 460 (NCI4th Rev.)— capital sentencing— prosecutor's argument—defendant's character and status—no gross impropriety**

A district attorney's argument in a capital sentencing proceeding was not so grossly improper as to require intervention *ex mero motu* where defendant contended that the district attorney injected arbitrary factors by arguing the defendant's character, including that he had his children lie for him, his privileged status in the community, his love of money, his self-control, and the extent of his remorse. These are matters which bear on defendant's blameworthiness and, during the penalty phase of a capital trial, the emphasis is on the character of defendant and the circumstances of the crime.

**Am Jur 2d, Trial §§ 572, 573.**

**34. Criminal Law § 475 (NCI4th Rev.)— capital sentencing— prosecutor's argument—flight—no error**

The trial court did not err in a capital prosecution for first-degree murder by allowing the district attorney to argue flight where the district attorney did not argue that the jury could consider flight as evidence of premeditation and deliberation.

**Am Jur 2d, Trial § 609.**

**35. Criminal Law § 458 (NCI4th Rev.)— capital sentencing— prosecutor's argument—aggravating circumstances—victim as witness in civil and criminal cases**

There was no error in a capital sentencing proceeding where the district attorney argued that the victim's status as a witness in civil and criminal cases could be considered as evidence of two aggravating circumstances.

**Am Jur 2d, Trial §§ 572, 573.**

**36. Criminal Law § 460 (NCI4th Rev.)— capital sentencing— prosecutor's argument—nonstatutory mitigating circumstances—weight**

There was no error in a capital sentencing proceeding where the district attorney argued that the jury should give no weight to nonstatutory mitigating circumstances.

**Am Jur 2d, Trial §§ 572, 573.**

**37. Criminal Law § 448 (NCI4th Rev.)— capital murder—prosecutor's argument—applying existing law**

There was no error in a capital prosecution for first-degree murder where the prosecutor argued that we must live under the laws we have until a time comes when we no longer need laws; he did not request that the jury apply a higher law or imply that the State's case was divinely inspired.

**Am Jur 2d, Trial § 643.**

**38. Criminal Law §§ 1390, 1392 (NCI4th Rev.)— capital sentencing—mitigating circumstances—instructions—confusion corrected—no error**

There was no error in a capital sentencing proceeding where the court submitted to the jury the nonstatutory circumstance that defendant led an uneventful, law-abiding life for 42 years and also submitted the statutory mitigating circumstance as to defendant's age, realized the mistake and told the jury that the nonstatutory mitigator had been confused with the statutory age mitigator, asked the jury to strike anything that had been said about the nonstatutory mitigator and correctly charged on it, then charged on the age mitigator without telling the jury not to consider defendant's lifestyle when considering this mitigator. Although defendant argues that the court confused the jury by mixing the nonstatutory mitigator with the statutory age mitigator and not telling the jury not to consider defendant's lifestyle, the court correctly charged the jury and it should have had no trouble applying the law to the evidence.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**39. Criminal Law § 1382 (NCI4th Rev.)— capital sentencing—mitigating circumstances—lack of prior criminal activity—no error**

The trial court did not err in a capital sentencing proceeding by charging on the mitigating circumstance that defendant has no significant history of prior criminal activity where defendant had no convictions, but there was evidence that he had committed crimes (assaults) against his wife, the murder victim, for which he had been charged. Although defendant said that the charge garbled the burden of proof, the court charged the jury that it must find the facts beyond a reasonable doubt and the only facts to which the court could have been referring involved the crimi-

nal charges. The court charged the jury that if one or more jurors found the mitigating circumstance to exist, the foreman could write yes in the space provided; this was not an incorrect placing of the burden of proof. Furthermore, the court should have resolved any question the jury might have had in the subsequent charge; the jury was bound to have known that it must find the circumstance if it did not find the assaults. Although defendant argues that the jury was never told that the State had the burden of proving the assaults or that defendant was presumed to be innocent, these considerations were covered when the jury was told it had to be satisfied beyond a reasonable doubt in order to find the assaults. Finally, although defendant says that the references were to unspecified assaults, there was evidence of several assaults during the guilt-innocence phase of the trial and the jury's decision not to find this circumstance is supported by its reliance on one or more of them.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**40. Criminal Law § 1370 (NCI4th Rev.)— capital sentencing— especially heinous, atrocious, or cruel aggravating circumstance—not unconstitutionally vague**

The aggravating circumstance that a murder was especially heinous, atrocious, or cruel is not unconstitutionally vague and overbroad as developed in North Carolina and applied in this case.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**41. Jury § 141 (NCI4th)— capital murder—jury selection— questions concerning parole eligibility**

The trial court did not err during jury selection for a first-degree murder prosecution by not allowing defendant to question prospective jurors about their conceptions of parole eligibility for a person sentenced to life in prison.

**Am Jur 2d, Jury §§ 206-208.**

**42. Jury § 262 (NCI4th)— capital murder—jury selection— peremptory challenges—reservations concerning death penalty**

There was no error in a capital prosecution for first-degree murder in allowing the district attorney to exercise peremptory

challenges against prospective jurors who had reservations about the death penalty.

**Am Jur 2d, Jury §§ 234 et seq.**

**43. Criminal Law § 1402 (NCI4th Rev.)— death penalty—not disproportionate**

A sentence of death was not disproportionate where the evidence supports the aggravating and mitigating circumstances, the sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor, this case is distinguishable from the seven cases in which a death penalty was found disproportionate because only two of those cases involved multiple aggravating circumstances and in none were three or more found; in only two was the especially heinous, atrocious, or cruel circumstance found by the jury and this case resembles neither because the defendant here was an adult, the jury specifically rejected the mitigating circumstance of impaired capacity, defendant did not try to aid the victim, he did not confess, and the transcript reflects numerous motives. While witness elimination was not the only reason for this murder, it must be given heavy weight in a proportionality review. As in *State v. Alston*, 341 N.C. 198, defendant intimidated the victim for several months, assaulting her on several occasions, until he shot her to death. The jury considered mitigating circumstances which reflected defendant's life prior to his difficulties with his wife; the penalty is not disproportionate because the jury did not find that these circumstances outweighed the aggravating circumstances. Defendant executed his wife, a person he should have protected, in a callous way. The sentence was proportionate.

**Am Jur 2d, Criminal Law § 628.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Wright, J., at the 1 November 1993 Criminal Session of Superior Court, Lenoir County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 8 April 1996.

The evidence showed that the defendant and the victim, his wife, were separated and engaged in a bitter divorce action involving child custody and equitable distribution. There was evidence of numerous assaults on the victim by the defendant prior to their separation and afterwards. The defendant had allegedly sexually

assaulted the victim, choked her to the point of near unconsciousness, and stalked her.

On 24 November 1992, the victim went to the defendant's house to leave their children after they had visited with her. The defendant went outside and got into the victim's Jeep. An eyewitness, who had been jogging on the street in front of the defendant's house, testified that he observed a Jeep in the street. He heard screaming and yelling coming from the Jeep. He saw a woman break from the Jeep and run up the driveway. The man, whom the witness identified as the defendant, also ran from the vehicle. The defendant then tackled the woman and straddled her. The two people were on the ground struggling, with the defendant on top of the victim. The witness stopped and asked what was going on, and the defendant told him to leave. The victim said, "Mister, please don't leave. If you leave, he'll kill me." The jogger then heard a shot, and the defendant ran behind the house.

The victim was shot in the head. She died from this wound. The victim also suffered injuries from a stun-gun and a beating apparently with the butt of a pistol. The defendant contended that the victim was in possession of the stun-gun and that she had attempted to use it on him. The defendant stated that he threw the stun-gun in the bushes. It was subsequently found in the bushes beside the driveway.

The defendant first told police that he knew nothing about the incident and that he was in the bathtub at the time. He later stated that he and the victim were arguing and that the victim began to use a stun-gun on him. They struggled in the driveway, but he was only trying to subdue her so that they could talk about their divorce. After he took the stun-gun from her, he heard a click and looked to see the victim holding a gun. The gun was not yet pointed at the defendant. He pushed the gun away, and it went off.

The jury found the defendant guilty of first-degree murder with premeditation and deliberation. After a capital sentencing hearing, the jury recommended a sentence of death. Judge Wright sentenced the defendant accordingly on 16 December 1993. The defendant appeals to this Court as of right.

*Michael F. Easley, Attorney General, by Valerie B. Spalding, Assistant Attorney General, for the State.*

*David G. Belser for defendant-appellant.*

STATE v. GRAY

[347 N.C. 143 (1997)]

WEBB, Justice.

[1] The defendant first assigns error to a statement by the judge. At the opening of court and before the defendant's case was called for trial, the judge instructed the jury as to court procedures. Among the things he told them was the following:

> The Court Reporter to my right is Davette Garvin. She is appointed by Judge Llewellyn, who is your Senior Resident Judge. He is also holding civil court this morning in another courtroom. It's her duty to take down and transcribe everything that's said in the courtroom during the trial and the hearing of motions so that the judge can review, or should it be appealed, any matter to the Supreme Court in Raleigh.

The defendant contends this statement to the jury implied to the jury that this Court would review its decision and correct any errors it might make. The defendant says this would violate the defendant's rights under the Eighth Amendment to the Constitution of the United States by diluting the responsibility of the jury. *Caldwell v. Mississippi*, 472 U.S. 320, 86 L. Ed. 2d 231 (1985); *State v. White*, 286 N.C. 395, 211 S.E.2d 445 (1975).

We do not believe that the statement, made by the judge before the case was called for trial, implied to the jury that this Court would correct any errors the jury might make. This case is governed by *State v. McKoy*, 323 N.C. 1, 372 S.E.2d 12 (1988), *sentence vacated on other grounds*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990), in which the court said to the jury of the court reporter, "she can type up a transcript of a trial and they mail it down to the Supreme Court and the Supreme Court can review what we're doing up here in Stanly County." *Id.* at 8, 372 S.E.2d at 15. We said "that this brief comment— at the outset of the trial and in the context of an explanation of the court reporter's duties—could not have influenced, adversely to defendant, the jury's perception of its responsibility for its decisions." *Id.* at 12, 372 S.E.2d at 17.

This assignment of error is overruled.

The defendant next assigns error to the allowance of challenges for cause to five prospective jurors based on their feelings about capital punishment. The defendant says these five persons were not proved to be unable to impose the death penalty and contends it was error to excuse them for cause. "[A] juror may not be challenged for cause based on his views about capital punishment unless those

views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt,* 469 U.S. 412, 420, 83 L. Ed. 2d 841, 849 (1985) (quoting *Adams v. Texas,* 448 U.S. 38, 45, 65 L. Ed. 2d 581, 589 (1980)).

[2] The defendant first objects to the use of leading questions by the State at the jury *voir dire.* Leading questions should not in most cases be used when testimony is being offered to a jury. To do so allows the questioner in effect to testify to the jury. 1 Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 169 (4th ed. 1993). This consideration does not apply at a jury *voir dire.* It is not error to allow leading questions at that time.

[3] The first venireperson who the defendant says was erroneously removed was Richard Bostic. The State first questioned Mr. Bostic, and he said his feelings about the death penalty would in essence prevent him from considering it. The defendant then questioned him, and he said he could follow the court's instructions in regard to the death penalty. The State then questioned Mr. Bostic again, and he said he did not think his feelings would completely block him from considering the death penalty but that they would hinder him from doing so. He said he would not automatically vote against the death penalty, but he did not think he could come into the courtroom and look the defendant in the eye and say he had voted for the death penalty. The court then asked Mr. Bostic if he was saying he would be unable to render a verdict with respect to the charge in accordance with the law both as to the guilt-innocence and penalty phases. Mr. Bostic answered, "Yes."

The colloquy with Mr. Bostic amply supports a finding by the court that Mr. Bostic's views could substantially impair the performance of his duties as a juror. It was not error to excuse him.

[4] The next venireperson who the defendant says was improperly excused was a Ms. Hines. Ms. Hines was a nurse who said she believed in capital punishment under certain circumstances. She said, however, that her training as a nurse made her lean toward life imprisonment rather than death. She said it would not prevent her from voting for the death penalty, but it would certainly influence her decision. She then said she was not sure she could come into the courtroom and recommend a death sentence. When asked whether this meant that her feelings about the death penalty would impair her in her deliberations, she answered, "Yes." Under questioning by the

defendant's attorney, Ms. Hines said she would vote for the death penalty if the aggravating circumstances required it. Ms. Hines said in answer to a question by the court that she could render a death sentence if, under the law, it should be applied. Under further questioning by the prosecuting attorney, Ms. Hines stated she could not stand up in the courtroom and tell a man she had recommended his life be taken. She said she could not follow the instructions of the court in this regard.

The answers given by Ms. Hines illustrate the United States Supreme Court's conclusion in *Wainwright* that a prospective juror's bias may, in some instances, not be proven with unmistakable clarity. In such cases, we must depend on the trial judge's judgment in determining whether the prospective juror would be able to follow the law impartially. *State v. Davis*, 325 N.C. 607, 386 S.E.2d 418 (1989), *cert. denied*, 496 U.S. 905, 110 L. Ed. 2d 268 (1990). Ms. Hines made some contradictory statements. The superior court judge was in the best position to judge the bias of Ms. Hines. There was an ample showing of bias to support his conclusion. We must defer to his judgment.

**[5]** The next venireperson who the defendant said should not have been excused was James Bryant. When asked about his feelings in regard to the death penalty, Mr. Bryant said he believed in it only for a second offense and that he would not impose it for a first murder. When questioned by the defendant's attorney, he said he would follow the court's instructions, but when he was questioned by the court, he reiterated that he would not impose the death penalty for a first offense of murder. Mr. Bryant's answers clearly support the finding that he could not be unbiased. It was not error to remove him from the jury.

**[6]** The fourth juror who the defendant says was improperly excused was James Waters. Mr. Waters said he believed in the death penalty but would not vote to impose it on another human being. The fifth juror who the defendant says was improperly excused was James Blizzard. Mr. Blizzard said he would always vote for life in prison and never vote for the death penalty. It was not error to excuse Mr. Waters or Mr. Blizzard.

This assignment of error is overruled.

**[7]** In his next assignment of error, the defendant contends his constitutional and statutory rights were violated by a court order

requiring the production of documents. On 8 September 1993, approximately six weeks prior to the trial, the district attorney issued subpoenas *duces tecum* to the North Carolina Department of Revenue for (1) a certified copy of defendant's 1991 and 1992 intangibles tax documentation, (2) certified copies of any 1991 and 1992 tax returns by defendant as custodian of his two children, and (3) certified copies of any and all 1991 and 1992 account information pertaining to the two children. A court order was obtained on 16 September 1993 for the production of the same documents from the same source. The court order was procured *ex parte* and without the defendant or his attorney being present.

The defendant contends the granting of the order *ex parte* and without the defendant's being present (1) violated his right to be present at every stage of his trial guaranteed by Article I, Section 23 of the North Carolina Constitution; (2) violated his right to confront the witnesses against him guaranteed by the Sixth Amendment to the Constitution of the United States; (3) violated his right to due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States by the violation of a statute, N.C.G.S. § 15A-1241 (1988), which gives him the right to a true, complete, and accurate record of all proceedings in his trial; (4) violated his statutory right to a complete recordation of the proceedings at the trial; and (5) deprived him of his right to counsel guaranteed by the United States Constitution and the North Carolina Constitution.

The issuance of the subpoenas *duces tecum* and the issuance of the order were the gathering of evidence for use at the trial and were not stages of the trial which entitled the defendant or his attorney to be present. A defendant does not have the right to be present as the State gathers its evidence.

This assignment of error is overruled.

[8] The defendant next assigns error to the refusal of the court to charge on self-defense. He bases this contention on his testimony that as he and his wife were struggling, he turned to look at the jogger and heard a click. He looked back at his wife and saw that she had a pistol in her hand. He then testified, "my normal reflex and instincts told me to push it away, so with my right hand, I just pushed. The gun discharged when I pushed it away."

Self-defense involves an intentional act. *State v. Blankenship*, 320 N.C. 152, 357 S.E.2d 357 (1987). All the evidence which would

exculpate the defendant showed the shooting was accidental. He was not entitled to an instruction on self-defense.

This assignment of error is overruled.

[9] The next assignment of error by the defendant involves the charge to the jury. The defendant did not object to the charge at the trial but says it constitutes plain error. The court charged the jury on flight as follows:

> The State contends that the defendant fled. Evidence of flight may be considered by you together with all other facts and circumstances in this case in determining whether the combined circumstances amount to admission or show a consciousness of guilt. However, proof of this circumstance of flight alone is not sufficient in itself to establish the defendant's guilt.

This instruction was taken from N.C.P.I.—Crim. 104.36. It did not include the following instruction which is found in the pattern instruction:

> Further, this circumstance has no bearing on the question of whether defendant acted with premeditation and deliberation. Therefore, it must not be considered by you as evidence of premeditation and deliberation.

The defendant says that by omitting these words from the charge, the court allowed the evidence of flight to be used as evidence of premeditation and deliberation, which was error. *State v. Bolin*, 281 N.C. 415, 425, 189 S.E.2d 235, 242 (1972). He argues that this error was compounded by an argument of the prosecuting attorney in which he told the jury it could consider evidence of flight as evidence of premeditation and deliberation.

The defendant did not object to this part of the charge when it was given. He is entitled to have this assignment of error reviewed only under the plain error rule. *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). We have said, " '[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.' " *Id.* at 661, 300 S.E.2d at 378 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212 (1977)).

In examining this assignment of error, we note that the court did not say the jury could consider evidence of flight as evidence of premeditation and deliberation. It charged the jury that it could consider

**STATE v. GRAY**

[347 N.C. 143 (1997)]

it as showing a consciousness of guilt, which is a correct statement of the law. It is speculative as to whether the jury took this to mean it could consider this as evidence of premeditation and deliberation. We cannot hold this was plain error.

This assignment of error is overruled.

**[10]** In his next assignment of error, the defendant contends the court should not have excluded from evidence a deposit ticket and cash-register tape which he contends were some proof that his wife had purchased a stun-gun. A stun-gun was found a few feet from the victim's body, and a pathologist testified the victim had been shot in the face with a stun-gun. The defendant's theory was that the victim had possession of the stun-gun and attempted to shoot him with it. He was able to get the stun-gun from her, and she then drew a pistol. He attempted to push the pistol away, and it went off, killing his wife.

In an effort to prove his wife first had possession of the stun-gun, the defendant attempted to prove she had purchased it from Pappy's Army/Navy Store. The State objected to the admission of this evidence, and a hearing out of the presence of the jury was held. The manager of the store testified that the stun-gun was of the type sold in the store. He identified a deposit ticket which showed the store had received a check for $212.00 from a person named Gray on 1 October 1992 and a cash-register receipt showing that the purchase was for two items totaling $212.00. The manager testified that he did not know the defendant, and when shown a picture of Mrs. Gray, he said she looked familiar. The court excluded the deposit ticket and the cash-register receipt from evidence.

We hold it was not error to exclude this evidence. We are guided by N.C.G.S. § 8C-1, Rules 401 and 403. Rule 401 defines "relevant evidence" to be "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1992). Rule 403 allows a judge to exclude relevant evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403 (1992).

In order to be admissible, there must be some connection between the proffered evidence and the fact to be proved. There is no

such connection here. The proffered evidence did not show that the sale was made to a woman, that it was made to the victim, or that there was a sale of a stun-gun. There was as much chance of confusion if this evidence had been introduced as there was that any fact would have been proved.

This assignment of error is overruled.

[11] By another assignment of error, the defendant contends it was error to play for the jury a recording of a telephone conversation between the defendant and his wife. The eleven-year-old son of the defendant and the victim had driven the victim's Jeep away from the victim's home. She called the defendant at his home and asked to speak to her son. The defendant would not allow her to do so. Most of the conversation between them consisted of demands by the defendant that the victim return bonds which he contended she had stolen and demands by the victim that she be allowed to speak to her son. The victim said at the end of the conversation, "Considering what you have done to me as far as the physical harm you have done to me I don't have any desire to particularly speak to you."

The State asked the defendant on cross-examination about a telephone conversation in which he asked his wife, "where are the bonds?" The defendant at first denied making such a statement and then said he did not remember it. The court allowed the State to play the recording for the jury when it was putting on its rebuttal evidence.

The defendant argues that the question on cross-examination of the defendant as to whether he had a conversation with the victim in regard to the bonds was designed to elicit impeaching testimony on a collateral matter, and the State was bound by his answer. *State v. Green*, 296 N.C. 183, 250 S.E.2d 197 (1978). He contends it was error to allow the State to introduce the recording, which impeached him by extrinsic evidence.

The difficulty with the defendant's argument is that the playing of the recording was not for impeachment purposes only. It showed his motive for the murder: his determination that his wife have no home, children, possessions, or marital money. Evidence of motive is relevant and competent. *State v. Ruof*, 296 N.C. 623, 630, 252 S.E.2d 720, 725 (1979). The statement by the victim that she had no desire to speak to him after the "physical harm" he had done to her probably should have been excluded. There was, however, substantial other

evidence of harm the defendant had done to his wife. This evidence was cumulative.

This assignment of error is overruled.

**[12]** The defendant next assigns error to the requirement by the court that he furnish to the State an affidavit made by his son and to the reading of the affidavit by the jury. The defendant called his son as a witness. His son testified that on the day of the incident, he and his sister had been visiting their mother. She drove them to their father's home. His father forced his way into the automobile, and his mother screamed at the defendant to get out of the automobile. The defendant's son and daughter left the automobile and entered the house. He looked out of the house and saw two people on the ground. He then heard a "loud sound."

The defendant's son testified further that a few minutes after he heard the sound, his father called him and his sister into the bathroom and told them their mother had suffered an accident but that no one would believe him. The defendant told his children to tell anyone who asked that their father was in the bathtub at the time the victim was shot.

The defendant's son had made an affidavit in which he said his father was in the bathtub at the time the victim was shot. The defendant's attorney read the affidavit at a bond hearing. After the defendant had rested his case, the prosecuting attorney moved that the defendant be required to produce the affidavit. The court ordered that this be done, and the State had it entered into evidence.

The defendant contends there were two errors committed by the court in regard to the affidavit. He says first that there was a violation of N.C.G.S. § 15A-906, which provides that statements made by defense witnesses are not discoverable. He also says it was error to admit the affidavit into evidence without a limiting instruction.

Assuming the affidavit was not discoverable under N.C.G.S. § 15A-906, the defendant waived his right not to produce the affidavit when his attorney read it at the bond hearing. *See State v. Hardy*, 293 N.C. 105, 235 S.E.2d 828 (1977).

As to the admission of the affidavit into evidence, the defendant says its only use could be to impeach the defendant's son. The defendant says, for this reason, the court should have given an instruction that the affidavit could be considered only as to whether

it impeached the witness. We note that the defendant did not request this instruction.

Again, assuming this was error, it could not have prejudiced the defendant. His son had testified the defendant had told him to lie as to what had happened. The defendant himself testified to the same effect. The introduction of the affidavit could only have been cumulative evidence of what was not in dispute.

This assignment of error is overruled.

[13] In his next assignment of error, the defendant contends the court should have excluded testimony of the jailer as to what the defendant told him as he was being put in his cell. David Heath, the jailer, testified that, as he was putting the defendant in his cell, Heath asked if there was anything else he could do for the defendant, and the defendant said, "No. At least now I can get a good night's sleep." The defendant says that this colloquy came after he had invoked his right to counsel and should have been excluded.

When a defendant invokes his right to counsel, the State may not interrogate him unless he initiates the conversation. *Edwards v. Arizona*, 451 U.S. 477, 68 L. Ed. 2d 378 (1981); *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966). In this instance, there was not an interrogation. The question by Mr. Heath as to whether he could do anything else for the defendant was not designed to elicit incriminating evidence. *See State v. Walls*, 342 N.C. 1, 463 S.E.2d 738 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 794 (1996). The testimony was properly admitted.

This assignment of error is overruled.

[14] The defendant next assigns error to the admission into evidence during the sentencing hearing of four misdemeanor warrants charging him with false imprisonment, assault on a female, communicating threats, and attempted assault with a deadly weapon. The victim had sworn to the warrants, and a magistrate had noted there was probable cause the defendant was guilty. The jackets showing the trial dates were also introduced.

The defendant says the warrants contained hearsay testimony and were not admissible as exceptions to the hearsay rule under N.C.G.S. § 8C-1, Rule 803(6) or (8). N.C.G.S. § 15A-2000(a)(3), which deals with capital sentencing proceedings, provides in part:

Evidence may be presented as to any matter that the court deems relevant to sentence, and may include matters relating to any of the aggravating or mitigating circumstances enumerated in subsections (e) and (f). Any evidence which the court deems to have probative value may be received.

N.C.G.S. § 15A-2000(a)(3) (Supp. 1996).

This statute has been interpreted to mean the Rules of Evidence do not apply in capital sentencing proceedings. If evidence is pertinent and dependable, it should not ordinarily be excluded. *State v. Rose*, 339 N.C. 172, 200, 451 S.E.2d 211, 227 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995). In this case, the evidence contained on the warrants that charges were pending against the defendant and that his wife would be a witness against him was probative of the N.C.G.S. § 15A-2000(e)(8) aggravating circumstance that defendant killed a witness against him. The jury was properly instructed to consider it in this way.

This assignment of error is overruled.

**[15]** The defendant next assigns error to the admission of certain testimony pursuant to N.C.G.S. § 8C-1, Rule 803(3) as a state-of-mind exception to the hearsay rule. The defendant, relying on *State v. Hardy*, 339 N.C. 207, 451 S.E.2d 600 (1994), says the testimony of certain witnesses as to what the victim told them merely recited facts and did not show the victim's state of mind. The defendant does not contend that the testimony is not otherwise admissible if the testimony shows the victim's state of mind.

The defendant first objects to the testimony of Sue Gregg Camaioni, an insurance agent and friend of the victim, who testified as to at least six conversations with the victim. She testified that, in February 1992, the victim told her that the defendant's psychological abuse made her feel as if she could no longer cope with the stress and strain of the relationship. In April of the same year, the victim said she was afraid that the defendant was also brainwashing the children. Also in April, the victim told her of an incident of sexual assault and stated that she was scared because of it. The witness also testified that at this point in time, the victim was sleeping in the victim's office. Camaioni testified that the defendant had tried to strangle the victim. She stated that she had observed the victim's bruised neck and injured eye, that the victim had stated that she felt the defendant had tried to kill her, and that the victim stated she was afraid for her life.

The witness further testified to a phone conversation in which she suggested that the victim leave town, and the victim stated that she was scared for her life but that she could not leave without her children. The defendant argues that these recitations of fact are in violation of *Hardy*.

The second witness about whose testimony the defendant complains was Betty Sue Lawson, a friend of the victim. She testified that the victim stated to Lawson that "she feared that he [the defendant] was going to kill her." Lawson said that the victim had told her of various instances of abuse. She further testified that the victim stated to her, "my husband is going to kill me. I know it for a fact. And if the police don't know who did it, I want you to go to them and tell them that he is the one who has killed me."

The defendant also objects to the testimony of Debbie Ryals, the defendant's next-door neighbor. She testified that the victim had told her that she was scared her husband would kill her before she got the children.

Finally, Randy Askew testified that he was a security guard at a mall. He stated that the victim had asked him on numerous occasions to walk her to her car at the mall. She told Askew that she needed an escort because she was in fear for her life from her husband.

We first note that in *Hardy*, relied on by the defendant, we held that diary entries were inadmissible because they contained mere recitation of facts and were totally without emotion. *Hardy*, 339 N.C. at 229, 451 S.E.2d at 612. In that case, we noted that the diary did not have statements such as "I'm frightened." *Id.* The present case is easily distinguished from *Hardy* since it contains such statements. Each of the witnesses testified as to the victim's "state of mind," that she was in fear for her life. The factual circumstances surrounding her statements of emotion serve only to demonstrate the basis for the emotions. Each of the witnesses testified that the victim had stated with specific reason and generally that she was scared of the defendant. Where appropriate, a searching *voir dire* of the witness took place. Moreover, the jury was properly instructed that it was to consider the testimony only for the purpose of showing the victim's state of mind. The evidence was admissible under the state-of-mind exception of Rule 803(3).

[16] The defendant further argues that the prosecutor improperly argued in closing arguments the defendant's acts of violence upon his

wife as substantive evidence. We note that evidence of the choking incident and sexual assault also came in under another hearsay exception during the testimony of the victim's doctor. Evidence concerning the choking incident and the stealing of the victim's Jeep were also testified to by the defendant himself. Therefore, these incidents were not improperly used by the prosecutor.

This assignment of error is overruled.

[17] The defendant next assigns error to the testimony of two witnesses, Aloise Burian and Wanda Winborne, who testified as to statements the victim made to them. Prior to trial, the State gave notice to the defendant of its intention to introduce certain hearsay testimony from these two witnesses pursuant to N.C.G.S. § 8C-1, Rule 804(b)(5), which provides for admission of testimony as an exception to the hearsay rule in certain cases when the testimony does not fit into any other exception to the rule.

At trial, the defendant did not object to the admission of Ms. Burian's testimony. The defendant objected to the testimony of Ms. Winborne, and a hearing was held. At the end of the hearing, the court found facts, as required in *State v. Triplett*, 316 N.C. 1, 340 S.E.2d 736 (1986), and ordered that Ms. Winborne's testimony be admitted.

Ms. Burian testified that the victim had told her the defendant had attempted to rape her in front of her children. The defendant objected to the word "rape," and the court told the jury to use the word "attack" in its place. Ms. Burian also said the deceased told her the defendant had followed her and harassed her and had told her he would kill her.

No objection was made to this testimony, and we must examine it for plain error. We cannot say that the admission of this testimony was a " '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.' " *State v. Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.) (footnote omitted), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). It was not plain error to admit this testimony.

[18] Ms. Winborne testified to the increasing fear of the victim in the months preceding her death. She testified that the victim told her that the defendant had forced his way into her apartment, pushed her against the wall, and attempted to force her head into the toilet. The victim displayed a bruise on her hip the size of a doorknob.

Before admitting this testimony, the court made the findings which in *Triplett* we said must be made before admitting testimony as a residual hearsay exception. The defendant attacks five of the findings. He says (1) the statements lacked circumstantial guarantees of trustworthiness, (2) the proffered statements were not evidence of material facts, (3) the evidence was not more probative on the point than any other evidence the State could offer, (4) the statements were covered by another hearsay exception, and (5) the general purposes of the Rules of Evidence and the interests of justice were not best served by admission of these hearsay statements into evidence. We disagree.

We believe the statements had guarantees of trustworthiness. The statement that the defendant had pushed the victim against the wall was corroborated by a bruise on her hip. The alleged action of the defendant was consistent with other evidence. The proffered statements were evidence of the defendant's intent at the time of the killing. This was evidence of a material fact. There was testimony of other witnesses to the attempt to force the victim's head into the toilet but not to his pushing her against the wall. This makes Ms. Winborne's testimony more probative than other evidence on this point. The defendant argues that the testimony was admissible under the state-of-mind exception to the hearsay rule, N.C.G.S. § 8C-1, Rule 803(3) (1992), and cannot be admitted under Rule 804(b)(5). The testimony of Ms. Winborne as to what the victim told her involved principally factual matters. Pursuant to *Hardy*, it would not have been admitted under Rule 803(3). This testimony was relevant to the matters involved in the case, and the interests of justice were served by its admission.

This assignment of error is overruled.

[19] The defendant next assigns error to the admission of testimony of Dr. Marshall Godwin, who was accepted as an expert in the field of obstetrics and gynecology. The defendant did not object to the testimony, and we must examine this issue under the plain error rule.

Dr. Barker had treated the victim for several years. Dr. Barker testified that the victim came to see him at his home and told him the defendant had "tried to choke her to the point of almost passing out and becoming unconscious"; that the defendant had tried to sexually assault her; and that the defendant had said, "I could've killed you if I wanted to," during which time the children were screaming and saying, "Stop Daddy. Don't hurt her." At a subsequent visit to Dr. Barker,

the victim told him that she and the defendant had been seeing a marriage counselor. The victim said the marriage counselor had stopped seeing them because she "was basically frightened of Dr. Gray and his behavior."

Most of this testimony was admissible pursuant to N.C.G.S. § 8C-1, Rule 803(4) as statements made for the purpose of medical treatment. *State v. Smith*, 315 N.C. 76, 337 S.E.2d 833 (1985). The defendant contends the victim's statements to Dr. Barker were not for medical treatment. The defendant says the victim went to Dr. Barker's home rather than his office. He examined her physical condition and suggested she go to the hospital, which the defendant says is not treatment. The fact that she went to Dr. Barker's home rather than his office does not mean she did not go for treatment. Even though Dr. Barker was not in his office, he made a medical recommendation to the victim, which was treatment.

The testimony that the children were screaming and that the marriage counselor had stopped seeing them because she was afraid of the defendant probably should have been excluded if an objection had been made. The admission of this testimony, however, does not rise to the level of plain error.

This assignment of error is overruled.

[20] The defendant next assigns error to the admission into evidence of the testimony of the jogger that the victim said while the defendant was holding her on the ground, "Mister, please don't leave. If you leave, he'll kill me." The defendant concedes this was an excited utterance, N.C.G.S. § 8C-1, Rule 803(2), but he says it is barred by other provisions of the hearsay rule. He says the statement, "If you leave, he'll kill me," should have been excluded by Rule 803(3) as a statement to prove the fact believed.

We have held that evidence which is so intertwined with the evidence of the commission of a crime that it forms an integral and natural part of the account of the crime is admissible. *State v. Agee*, 326 N.C. 542, 548, 391 S.E.2d 171, 174 (1990). This statement by the victim was an integral part of the account of the crime. It was admissible into evidence.

This assignment of error is overruled.

[21] In his next assignment of error, the defendant contends the district attorney improperly argued that flight was proof of premedita-

tion and deliberation. The defendant did not object to the argument, but he says it was so egregious the court should have intervened *ex mero motu*. The prosecutor argued:

> The court's going to struggle I suspect on what the meaning— the circumstance of flight means, it means that it can be implied consciousness of guilt, just like concealment of evidence. But that's also a circumstance on premeditation and deliberation. But if you flee, then it could be your statement implied to the world that I am guilty of a criminal offense.

It is not clear that the district attorney was referring to flight when he mentioned premeditation and deliberation. He could have been referring to the concealment of evidence. At any rate, the argument does not rise to the level of gross impropriety.

This assignment of error is overruled.

[22] The defendant next assigns error to the failure of the record to contain the verdict sheet. The verdict sheet was lost in the office of the clerk of superior court. The defendant contends that no valid verdict exists in this case, and no judgment may be imposed. He says that in the absence of a written verdict sheet, there is no way we can determine whether the verdict was properly returned.

N.C.G.S. § 15A-1237 provides in pertinent part:

> (a) The verdict must be in writing, signed by the foreman, and made a part of the record of the case.

> (b) The verdict must be unanimous, and must be returned by the jury in open court.

N.C.G.S. § 15A-1237 (1988).

We realize that some of our cases hold that the appellant must perfect the record on appeal including the verdict sheet and the appeal may be dismissed if this is not done. *See State v. Felmet*, 302 N.C. 173, 176, 273 S.E.2d 708, 711 (1981); *State v. Hunter*, 245 N.C. 607, 609, 96 S.E.2d 840, 841 (1957) (per curiam); *State v. Currie*, 206 N.C. 598, 599, 174 S.E. 447, 447 (1934) (per curiam). In this case, it is not necessary to enforce this rule.

The transcript reveals that the judge and the clerk examined the verdict sheet after it was taken by the bailiff from the jury. If there had been an irregularity in the verdict they would have found it. The

jury was polled and each juror said he or she found the defendant guilty of first-degree murder. There can be no doubt that the jury found the defendant guilty of first-degree murder and the record shows it. The record is sufficient for us to determine the appeal. Under these circumstances, we will not dismiss it.

This assignment of error is overruled.

[23] The defendant next assigns error to the denial of his motion for a change of venue or for a special venire. N.C.G.S. § 15A-957 provides in part:

If, upon motion of the defendant, the court determines that there exists in the county in which the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial, the court must either:

(1) Transfer the proceeding to another county in the prosecutorial district as defined in G.S. 7A-60 or to another county in an adjoining prosecutorial district as defined in G.S. 7A-60, or

(2) Order a special venire under the terms of G.S. 15A-958.

N.C.G.S. § 15A-957 (1988). The purpose of this statute is to ensure that jurors decide cases based on evidence introduced at trial and not on something they have heard outside the courtroom. In some of our cases, we have said it is within the discretion of the trial court whether to remove the case or to order a special venire. If the moving party can make a sufficient showing of prejudice, however, the court must grant the motion. *State v. Abbott*, 320 N.C. 475, 478, 358 S.E.2d 365, 367-68 (1987).

A hearing was held on the defendant's motion prior to the trial. The defendant adduced the testimony of Dr. Tim Britton, who was accepted as an expert in polling. Dr. Britton testified that he conducted two telephone polls in Lenoir County in which two questions were asked of each person polled. The questions were whether the respondent had heard of this case and whether he or she thought the defendant could get a fair trial in Lenoir County. In the first poll, eighty-five percent said they had heard of the case. Fifteen percent of those who had heard of the case thought the defendant could get a fair trial in Lenoir County, seventy-two percent did not think so, and thirteen percent did not know. In the second poll, eighty-six percent had heard of the case. Twenty-one percent of those who had so

heard thought the defendant could get a fair trial in Lenoir County, sixty percent thought he could not, and nineteen percent did not know.

The defendant also introduced newspaper accounts which quoted a detective as saying four witnesses had seen Mrs. Gray running from the Jeep and being tackled by the defendant. This statement was not true. Also, one of defendant's attorneys was accidentally shot by his wife, and this was reported on television with a description of the charges against the defendant. The court found that the defendant had not carried his burden of proving that he could not receive a fair trial in Lenoir County and denied his motion. The defendant says this was error.

The newspaper account, although erroneous, was not prejudicial. The State's evidence showed that the defendant tackled his wife and held her on the ground. The news account did not contain any false information which was prejudicial. As for the television program which reported one of defendant's attorneys had been shot by his wife, we do not see how this could have prejudiced the defendant.

The testimony of Dr. Britton presents a more difficult question. He testified, based on polls which showed that a large majority of the residents of Lenoir County felt the defendant could not get a fair trial in Lenoir County, that in his opinion the defendant could not get a fair trial in the county. In determining this question, we are guided by the rule that the burden of proof is on the defendant to show prejudice. *State v. Corbett*, 309 N.C. 382, 307 S.E.2d 139 (1983). In this case, there was a vigorous cross-examination of Dr. Britton, particularly on the ability of respondents in the two polls to understand the meaning of a "fair trial." The court could have felt that the defendant had not carried his burden. We cannot hold that this was error.

This assignment of error is overruled.

[24] The defendant next assigns error to the denial of his motion to suppress all his statements to law enforcement officers and items gathered in a search of his home. He says first that he was taken into custody without probable cause to arrest him and that his statements to the officers should have been suppressed as the "fruit of a poisonous tree." *Mapp v. Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081 (1961). He also contends that the entry into his home to arrest him without a search warrant was illegal, thus requiring that his statements to the officers be suppressed. He contends further that he made a request

for counsel when he was in his home and that this request was ignored. This requires the suppression of his statements to the officers, says the defendant. The defendant says further that the consent to search his home was the result of an unlawful arrest. Finally, the defendant says his statements to the officers were not in fact voluntary. None of these arguments have merit.

The evidence at the hearing showed that the court found as facts that when the officers arrived at the scene, they found the victim's body. A neighbor told them the defendant had killed his wife. This gave them probable cause to arrest the defendant. *State v. Perdue,* 320 N.C. 51, 357 S.E.2d 345 (1987). The evidence also showed and the court found as facts that the defendant came to the door armed with a pistol, which was later found to be a toy. This was an exigent circumstance which justified the officers' entering the house without a search warrant to arrest the defendant. *State v. Allison,* 298 N.C. 135, 257 S.E.2d 417 (1979).

As to the defendant's argument that he was not allowed to have an attorney after he requested one, the evidence showed and the court found as facts that Bob D. Worthington, a member of the bar and a neighbor of the defendant, was outside defendant's home as he was being taken to the police headquarters. The defendant requested that Mr. Worthington represent him. An officer notified Mr. Worthington of this request, and Mr. Worthington followed the defendant to police headquarters, where he remained with defendant during the police interrogation.

We have held that the defendant was not unlawfully arrested. The consent to search his home cannot be invalidated for this reason. As to the defendant's contention that his statements to the officers were not in fact voluntary, the court held otherwise. This holding was supported by the evidence. We cannot disturb it. Finally, the defendant's contention that he was not allowed legal representation is without merit.

This assignment of error is overruled.

[25] The defendant next assigns error to the submission of two aggravating circumstances: (1) "Was this murder committed to disrupt or hinder the lawful exercise of a governmental function?" and (2) "Was this murder committed against Roslyn Gray because of the exercise of her official duty as a witness, that is, swearing out under oath before a magistrate four criminal warrants against the

Defendant in her role as a witness in trials scheduled December 8, 1992?" N.C.G.S. § 15A-2000(e)(7), (8) (1988). The defendant says the same evidence was used to support the submission of these two aggravating circumstances.

The same evidence may not be used to support two aggravating circumstances. *State v. Gay*, 334 N.C. 467, 494, 434 S.E.2d 840, 856 (1993); *State v. Goodman*, 298 N.C. 1, 29, 257 S.E.2d 569, 587 (1979). If the evidence to support one circumstance is not identical but overlaps the evidence to support another circumstance, both circumstances may be submitted. In this case, the evidence to support the two circumstances overlapped.

The (e)(7) circumstance, which dealt with the disruption or hindrance of a governmental function, was supported by evidence that the defendant had been served with a show cause order for an accounting of marital monies in a divorce action. The order was returnable a few days after the murder of the defendant's wife. This evidence did not support the (e)(8) circumstance that the person killed was to be a witness in a criminal case. The evidence supporting the (e)(8) circumstance that the defendant killed a witness in a criminal case was supported by evidence that four criminal warrants had been served on the defendant and that his wife was to be a witness against him. This evidence did not support the circumstance that the murder disrupted a civil proceeding. The evidence supporting the two aggravating circumstances was not identical.

The defendant argues further under this assignment of error that the court did not properly instruct the jury not to use the same evidence to find more than one aggravating circumstance. *Gay*, 334 N.C. at 495, 434 S.E.2d at 856. The court defined the two aggravating circumstances and explained to the jury the evidence that supported each of them. This adequately explained to the jury how to consider the evidence.

This assignment of error is overruled.

**[26]** The defendant next assigns error to the submission of the especially heinous, atrocious, or cruel aggravator, N.C.G.S. § 15A-2000(e)(9). He argues that the evidence did not support submission of this aggravating circumstance. The defendant cites *State v. Sexton*, 336 N.C. 321, 444 S.E.2d 879, *cert. denied*, 513 U.S. 1006, 130 L. Ed. 2d 429 (1994), and contends that this case does not fall within any of the (e)(9) categories set out in that case.

STATE v. GRAY

[347 N.C. 143 (1997)]

In *Sexton*, we identified several types of murders which warrant submission of the especially heinous, atrocious, or cruel circumstance. We said:

"One type includes killings physically agonizing or otherwise dehumanizing to the victim. *State v. Lloyd*, 321 N.C. 301, 319, 364 S.E.2d 316, 328[, *sentence vacated on other grounds*, 488 U.S. 807, 102 L. Ed. 2d 18] (1988). A second type includes killings less violent but 'conscienceless, pitiless, or unnecessarily torturous to the victim,' *State v. Brown*, 315 N.C. 40, 65, 337 S.E.2d 808, 826-27 (1985), [*cert. denied*, 476 U.S. 1164, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988),] including those which leave the victim in her 'last moments aware of but helpless to prevent impending death,' *State v. Hamlet*, 312 N.C. 162, 175, 321 S.E.2d 837, 846 (1984). A third type exists where 'the killing demonstrates an unusual depravity of mind on the part of the defendant beyond that normally present in first-degree murder.' *Brown*, 315 N.C. at 65, 337 S.E.2d at 827."

*Sexton*, 336 N.C. at 373, 444 S.E.2d at 908 (quoting *State v. Gibbs*, 335 N.C. 1, 61-62, 436 S.E.2d 321, 356 (1993), *cert. denied*, 512 U.S. 1246, 129 L. Ed. 2d 881 (1994)).

The defendant asserts that the evidence showed only that the defendant and victim were involved in a struggle and that the victim requested help from a jogger. He says this evidence does not show that the victim begged for her life.

The State argues and we agree that the case falls into the second *Sexton* category: the murder was "conscienceless" and "pitiless." The defendant abused his wife psychologically and physically. He had stalked her. He had previously stated that he could kill her, and she was afraid he was going to do so. He left her in her last moments aware of her impending death but unable to do anything about it. Furthermore, the evidence showed that prior to being shot, the victim was stung with a stun-gun and "pistol whipped." This evidence clearly establishes the aggravating circumstance that the murder was especially heinous, atrocious, or cruel.

This assignment of error is overruled.

[27] The defendant next assigns error to the submission of the (e)(8) aggravating circumstance that the murder was committed because of the victim's role as a witness. The defendant contends there was not sufficient evidence to support this circumstance.

The State introduced four criminal warrants against the defendant which were based on acts of violence against his wife. The victim was listed as the complainant on each warrant. The defendant says that this is not sufficient evidence for the jury to find that the victim was a witness against him or that she was killed because she was a witness. We believe that a jury could find from this evidence that the victim had procured warrants against him or that she was waiting to testify against him. This would make her a witness against the defendant. We also believe a jury could find that one of the reasons the defendant killed his wife was because she had warrants issued against him. The defendant argues further that if the victim did procure the warrants and was waiting to testify, this was not part of her official duty as required by the (e)(8) aggravator. We believe procuring a warrant and waiting to testify constitute the performance of an official duty of a witness. *State v. Green*, 321 N.C. 594, 365 S.E.2d 587, *cert. denied*, 488 U.S. 900, 102 L. Ed. 2d 235 (1988).

This assignment of error is overruled.

[28] In his next assignment of error, the defendant contends the court should not have submitted the (e)(7) aggravator that the murder was committed to disrupt or hinder the lawful exercise of a governmental function. The defendant and his wife were involved in a divorce action. The defendant had refused to answer interrogatories concerning finances of the parties and had been served with an order to answer the interrogatories or show cause why he should not be held in contempt. The discovery was to have been completed one week after the defendant killed his wife. It is this disruption of the divorce proceedings upon which the State relies.

The defendant says the only evidence that he committed the murder to disrupt the divorce action is that he killed his wife and that this stopped the action. Under the evidence in this case, this is enough. The parties were engaging in a bitter divorce action, and the defendant was determined his wife would get nothing from the marriage. He had liquidated marital property and put the proceeds in his name. He would not answer interrogatories. The jury could reasonably find that one reason he killed his wife was to stop this action against him.

This assignment of error is overruled.

[29] The defendant next assigns error to the court's charge on mitigating circumstances. The court charged the jury as to statutory mitigating circumstances as follows:

By including specific mitigating circumstances in the death penalty statute, the legislature has determined that those circumstances have mitigating value . . . .

. . . .

Unlike the reminder [sic] of the possible mitigating circumstances, you don't have to enter into consideration[,] does it have mitigating value. The legislature has already made that determination for you. But still, the weight you give to it is up to you.

At several other places in the charge, the court instructed the jury that if it found a statutory mitigating circumstance to exist, that circumstance had mitigating value but the weight to be given to it was entirely up to the jury.

The defendant says that telling the jury that the weight to be given the mitigating circumstance was up to it was error in that the jury was never told it must give some weight to the circumstance. He says the jury should have been told that the weight it gave any statutory mitigating circumstance was up to it but that it "would have to give it some weight."

The challenged jury instruction in this case complies with what we said in *State v. Fullwood*, 323 N.C. 371, 396, 373 S.E.2d 518, 533 (1988), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990). The jury was told that if it found a mitigator to exist, it had some mitigating value, but the weight to give it was up to the jury. This case is not like *State v. Jaynes*, 342 N.C. 249, 284, 464 S.E.2d 448, 469 (1995), *cert. denied*, —— U.S. ——, 135 L. Ed. 2d 1080 (1996), upon which the defendant relies. In *Jaynes*, the jury was told that it must determine whether a statutory mitigating circumstance has mitigating value.

This assignment of error is overruled.

[30] The defendant next assigns error to the refusal of the court to submit as a mitigating circumstance that the "[d]efendant has demonstrated an ability to adjust well in prison and could be of service to fellow prisoners by working as a dental assistant in the North Carolina prison system." The evidence to support this proposed mitigating circumstance consisted of testimony by Ms. Carolyn Lanier, the matron at the Lenoir County jail. Ms. Lanier testified that the defendant was housed in an isolation cell. Ms. Lanier testified that prior to the trial, the defendant had not been inclined to get up, to

change his linen, or to clean up. He only wanted to sleep and became irritated if awakened. Ms. Lanier said the defendant had adjusted well to jail. She testified on cross-examination that when the trial began, the defendant began to eat more and spend more time on his feet. He wrote a great deal.

The evidence to support this proposed mitigating circumstance was tenuous at best. The testimony of Ms. Lanier described a man who was surly while incarcerated in the Lenoir County jail. How probative this would be as to adjustment in the prison system is questionable. Assuming the mitigator should have been submitted, we hold it was harmless error beyond a reasonable doubt not to do so.

In *State v. Robinson*, 336 N.C. 78, 443 S.E.2d 306 (1994), *cert. denied*, 513 U.S. 1089, 130 L. Ed. 2d 650 (1995), we held that it was harmless error for the court not to submit as a nonstatutory mitigating circumstance that "in a structured prison environment, Dwight Lamont Robinson is able to conform his behavior to the rules and regulations and performs tasks he is required to perform." *Id.* at 109, 443 S.E.2d at 323. We held that the defendant's evidence in support of this circumstance could be considered in connection with other mitigating circumstances submitted.

In this case, the court submitted as a mitigating circumstance that "[t]he defendant following arrest and for a period of over one (1) year exhibited good conduct while in Lenoir County Jail." The jury found this circumstance. The court also submitted the statutory "catch-all" mitigating circumstance, "Any other circumstance arising from the evidence which the jury deems to have mitigating value." N.C.G.S. § 15A-2000(f)(9). The jury did not find this circumstance. Under the circumstances submitted, the jury was able to consider the defendant's evidence. If the jury did not consider the defendant's conduct in jail sufficient to outweigh the aggravating circumstances, it is not likely it would have thought his potential conduct in prison would have outweighed the aggravating circumstances.

This assignment of error is overruled.

[31] The defendant next assigns error to the court's failure to intervene *ex mero motu* and stop the district attorney from making what he contends were seven improper jury arguments. The defendant did not object to these arguments, and in order to obtain relief, he must show the arguments were so grossly improper that it was an abuse of

discretion for the court not to intervene. *State v. Jolly*, 332 N.C. 351, 368, 420 S.E.2d 661, 671 (1992).

The district attorney argued:

> As jurors today, you should take seriously our obligation pursuant to your oath to do something about violent crimes in your neighborhood, in your city, in your county and your community.

This was not an improper argument. It did not, as the defendant contends, ask the jury to convict the defendant, in violation of *State v. Scott*, 314 N.C. 309, 312, 333 S.E.2d 296, 298 (1985), because of the public sentiment against crime. It was a part of the district attorney's general remarks at the opening of his summation which emphasized the duties of the jurors. It was certainly not so grossly improper that it required *ex mero motu* intervention by the court.

[32] The defendant next complains that the district attorney argued that the defendant's age, status, and size should be considered in determining whether he should receive the death sentence. The character of the defendant is relevant in determining whether the death penalty should be imposed. N.C.G.S. § 15A-2000(d)(2). This argument was not improper.

[33] The district attorney argued the defendant's character at length, including that the defendant had his children lie for him, that defendant had a privileged status in the community, the defendant's love of money, his self-control, and the extent of his remorse. The defendant contends this injected arbitrary factors into the sentencing proceeding. We disagree. These are matters which bear on the defendant's blameworthiness. During the penalty phase of a capital trial, the emphasis is on the character of the defendant and the circumstances of the crime. *State v. Oliver*, 309 N.C. 326, 360, 307 S.E.2d 304, 326 (1983). This was a proper argument.

[34] The defendant next argues that the court should not have allowed the district attorney to argue that the jury should consider flight. This argument is based on the premise that the jury should not have been allowed to consider flight as evidence of premeditation and deliberation. We have held it was not error to allow the jury to consider flight. The district attorney did not argue that the jury could consider flight as evidence of premeditation and deliberation.

[35] The defendant also argues that the district attorney should not have been allowed to argue that the victim's status as a witness in the

STATE v. GRAY

[347 N.C. 143 (1997)]

civil and criminal cases could be considered as evidence of two aggravating circumstances, that the murder was committed to disrupt a governmental function and that the murder was committed to eliminate a witness. We have held that the evidence supported the submission of these two aggravating circumstances. It was not error for the district attorney to argue them.

[36] The defendant next argues that the district attorney should not have been allowed to argue that the jury should give no weight to the non-statutory mitigating circumstances. We have held that it is for the jury to determine what weight to give non-statutory mitigating circumstances. This was a proper argument.

[37] Finally, the defendant contends that the prosecutor improperly argued that the State was divinely inspired and that the jury should apply a "higher law." The prosecutor stated:

Whatever your decision, that's your decision. I want to encourage you to understand what you're doing; to understand how we are all a part of one another; how our actions affect us all; and how, if you agree, the last vote maybe [sic] the law and whatever the law typifies because the law is inspired by things other than just human events, and considerations for one another's lives. You know it and I know it.

It's there for us in our temporal passion so that we may live with one another. It's an imperfect instruction. In the hope that some day a more perfect instruction will come and we will not need the law. It's up to you to decide.

This argument is not improper. The prosecutor merely explained that until a time comes when we no longer need laws, we must live under the laws that we have. He did not request that the jury apply a higher law or imply that the State's case was divinely inspired.

This assignment of error is overruled.

[38] The defendant next assigns error to the court's charge during the sentencing proceeding. Among the mitigating circumstances submitted to the jury was a nonstatutory circumstance that "[f]or 42 years prior to his separation from Roslyn Gray, Defendant led an uneventful, law-abiding life posing no threat to his family or community." The statutory mitigating circumstance as to the defendant's age, N.C.G.S. § 15A-2000(f)(7), was also submitted.

STATE v. GRAY

[347 N.C. 143 (1997)]

The court charged on the nonstatutory mitigating circumstance and added that the jury must consider whether the age of the defendant was a mitigating circumstance. The court said further that the jury must consider the defendant's style of life. The judge then realized his mistake and told the jury he had confused the nonstatutory mitigator with the statutory age mitigator. He asked the jury to strike anything he had said about the nonstatutory mitigator and correctly charged on it. The court then charged on the age mitigator but did not tell the jury not to consider the defendant's lifestyle when considering this mitigator. The jury found the nonstatutory mitigator but did not find the statutory age mitigator.

The defendant argues that by mixing the nonstatutory mitigator with the statutory age mitigator and not telling the jury not to consider the lifestyle of the defendant, the court confused the jury. We disagree. The court correctly charged the jury, and it should have had no trouble applying the law to the evidence.

This assignment of error is overruled.

[39] The defendant next assigns error to the charge on the mitigating circumstance that "[t]he defendant has no significant history of prior criminal activity." N.C.G.S. § 15A-2000(f)(1). The defendant had no prior conviction of any crime, but there was evidence in this case that he had committed the crimes against his wife with which he had been charged. The court submitted evidence of these crimes as proof of prior criminal activity.

The court charged the jury as follows:

> You would find this mitigating circumstance if you find that an assault on the victim's person, if you find there to have been such an assault; an attempt to immerse her head in the toilet, if you find there was such an attempt to assault her by immersing her head in the toilet; and choking her, if you find that and that this is not a significant history of prior criminal activity.

> You must find these acts beyond a reasonable doubt in both—as they were mentioned in the guilt phase of the trial, and if one or more of you finds by a preponderance of the evidence that this circumstance exist [sic], you would so indicate by having your foreman write "yes" in the space provided after this mitigating circumstance on the "issues and recommendations form."

The court later reinstructed on this mitigating circumstance and placed the burden on the State to prove beyond a reasonable doubt that defendant had committed the assaults and on the defendant to prove the mitigating circumstance by the preponderance of the evidence.

The defendant says the above-quoted section of the charge garbled the burden of proof. We do not believe it did so. The court charged the jury that it must find the facts beyond a reasonable doubt. The only facts to which the court could have been referring involved the criminal charges. It charged the jury that if one or more jurors found the mitigating circumstance to exist, the foreman would write "yes" in the space provided. This was not an incorrect placing of the burden of proof. In its subsequent charge, the court should have resolved any question the jury might have had.

The defendant also argues that the jury was never told that if it did not find beyond a reasonable doubt that the assaults had been committed, it must find this circumstance. The jury was told that in order not to find this mitigating circumstance, it must find beyond a reasonable doubt that the assaults had been committed. The jury was bound to have known that if it did not find the assaults, it must find the circumstance.

The defendant argues further that in considering the assaults, the jury was never told that the State had the burden of proving them or that the defendant was presumed to be innocent. These considerations were covered when the jury was told it had to be satisfied beyond a reasonable doubt in order to find the assaults.

Finally, the defendant says the references were to unspecified assaults. There was evidence of several assaults during the guilt-innocence phase of the trial, and the defendant says we cannot tell upon which of the assaults the jury relied. The jury's decision not to find this circumstance is supported by its reliance on one or more of them.

This assignment of error is overruled.

[40] In his next assignment of error, the defendant argues that, as developed in North Carolina and as applied in this case, the aggravating circumstance that the murder was especially heinous, atrocious, or cruel is unconstitutional for being overbroad and vague. He recognizes that in *State v. Syriani*, 333 N.C. 350, 428 S.E.2d 118, *cert. denied*, 510 U.S. 948, 126 L. Ed. 2d 341 (1993), we rejected this

argument. He asks us to reconsider our position. This we decline to do.

This assignment of error is overruled.

[41] The defendant next assigns error to the refusal of the court to allow him to question prospective jurors about their conceptions of parole eligibility for a person sentenced to life in prison. He concedes we have decided this question against his position in *State v. McNeil*, 324 N.C. 33, 44, 375 S.E.2d 909, 916 (1989), *sentence vacated on other grounds*, 494 U.S. 1050, 108 L. Ed. 2d 756 (1990), but he asks us to reconsider our position. This we decline to do.

This assignment of error is overruled.

[42] In his thirtieth assignment of error, the defendant asks us to change our position as enunciated in *State v. Robbins*, 319 N.C. 465, 494, 356 S.E.2d 279, 297, *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987), and hold that it was error for the district attorney to be allowed to exercise peremptory challenges to prospective jurors who had reservations about the death penalty. We decline to do so.

This assignment of error is overruled.

The defendant makes sixteen additional assignments of error in which he concedes the questions have been decided against him. He raises the questions to preserve them for appellate review. These assignments of error are overruled.

## PROPORTIONALITY REVIEW

[43] Finding no error in the guilt-innocence and sentencing phases, it is now our duty to determine (1) whether the evidence supports the jury's finding of aggravating and mitigating circumstances; (2) whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases. N.C.G.S. § 15A-2000(d)(2); *State v. Robbins*, 319 N.C. 465, 356 S.E.2d 279. An examination of the record reveals the evidence supports the findings of the aggravating and mitigating circumstances. We also hold that the sentences were not imposed under the influence of passion, prejudice, or any other arbitrary factor.

Our next task is to determine whether the sentence imposed is excessive or disproportionate to the penalties imposed in similar cases, considering both the crime and the defendant. The jury found

three aggravating circumstances: (1) that the murder was committed to disrupt or hinder the lawful exercise of a governmental function; (2) that the murder was committed against Roslyn Gray because of the exercise of her official duty as a witness; and (3) that the murder was especially heinous, atrocious, or cruel. N.C.G.S. § 15A-2000(e)(7), (8), (9).

Twenty-one mitigating circumstances were submitted to the jury. One or more jurors found thirteen of them, none of which were statutory mitigating circumstances.

This Court gives great deference to a jury's recommendation of a death sentence. *State v. Quesinberry*, 325 N.C. 125, 145, 381 S.E.2d 681, 694 (1989), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990). In only seven cases have we found a death sentence disproportionate. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373; *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983).

However, we find that the instant case is distinguishable from each of these seven cases. We note that in only two of the disproportionate cases were multiple aggravating circumstances found to exist. *Young*, 312 N.C. 669, 325 S.E.2d 181; *Bondurant*, 309 N.C. 674, 309 S.E.2d 170. In none of the cases were three or more aggravating circumstances found.

Further, in only two of the cases where this Court has held the death penalty to be disproportionate was the especially heinous, atrocious, or cruel circumstance found by the jury. *Stokes*, 319 N.C. 1, 352 S.E.2d 653; *Bondurant*, 309 N.C. 674, 309 S.E.2d 170. However, the present case is not similar to either *Stokes* or *Bondurant*. In *Stokes*, we found the death penalty disproportionate where the defendant was a teenager, and the jury found the mitigating circumstances of both his age and that his capacity to appreciate the criminality of his conduct was impaired. The defendant in this case was an adult, and his jury specifically rejected the mitigating circumstance of impaired capacity. In *Bondurant*, this Court focused on the fact that the defendant expressed remorse and concern by seeking medical attention for the victim and confessing to police. The Court also

noted that the defendant did not have a motive for killing the victim. The defendant in the present case did not try to help the victim, he did not confess, and the transcript reflects evidence of numerous motives for the murder.

The defendant cites two cases, *State v. Alston*, 341 N.C. 198, 461 S.E.2d 687 (1995), *cert. denied,* —— U.S. ——, 134 L. Ed. 2d 100 (1996), and *State v. Maynard*, 311 N.C. 1, 316 S.E.2d 197, *cert. denied*, 469 U.S. 963, 83 L. Ed. 2d 299 (1984), in which witness elimination and the heinous, atrocious, or cruel aggravator were involved and attempts to distinguish them. We do not believe he has done so. In *Maynard*, the witness elimination aggravator was not submitted to the jury, but the evidence showed that was the only reason for the murder. We said this made the death penalty proportionate. Witness elimination was not the only reason for the murder in this case, but *Maynard* illustrates the heavy weight that must be given witness elimination in a proportionality review.

In *Alston*, the jury found witness elimination and heinous, atrocious, or cruel as aggravating circumstances. The defendant says that case is distinguishable because the murder was much more cruel in *Alston*. It was cruel enough in this case. For several months prior to her death, the defendant brutalized his wife until he killed her. She knew all too well that death was impending when the defendant was holding her on the ground and she begged the jogger not to leave her. We believe *Alston* is comparable to this case. In *Alston*, as in this case, the defendant intimidated the victim for several months, assaulting her on several occasions, until he choked her to death. *Alston* and *Maynard* support the imposition of the death penalty in this case.

The defendant says that prior to his difficulties with his wife, he led an exemplary life. This is reflected in the mitigating circumstances found by the jury of the services he had provided to the community and the care given to his children and his mother. The jury considered these mitigating circumstances in reaching its result. We cannot say the penalty is disproportionate because the jury did not find that these mitigating circumstances outweighed the aggravating circumstances.

We are impressed by the callous way in which the defendant executed his wife, a person he should have protected. The sentence imposed was proportionate.

For the reasons stated in this opinion, we find no error in the trial or the sentencing proceeding. We also hold that the death sentence is proportionate.

NO ERROR.